UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | | |
|---|---|---|
| SAVIOR ASSOCIATES, ON BEHALF OF ITSELF AND ALL OTHERS SIMILARLY SITUATED, | ) ) ) | CIVIL ACTION NO. |
| | ) | CLASS ACTION |
| PLAINTIFF, | ) ) | |
| VS. | ) ) | |
| C. LOURENCO GONCALVES, JOHN T. BALDWIN, ERIC L. PRESS, M. ALI RASHID, MATTHEW R. MICHELINI, LARRY K. POWERS, MARK A. SLAVEN, RELIANCE STEEL & ALUMINUM CO.,  METALS USA HOLDINGS CORP., AND  APOLLO MANAGEMENT V, L.P. | ) ) ) ) ) ) ) ) ) ) | |
| DEFENDANTS. | ) | |

## COMPLAINT

Plaintiff, by its attorneys, alleges as and for its class action complaint, upon personal knowledge as to itself and its own acts, and as to all other matters upon information and belief derived from *inter alia*, a review of documents filed with the Securities and Exchange Commission ("SEC"), press releases issued by the Defendants, and publicly available news sources, such as newspaper articles, as follows:

## NATURE OF THE ACTION

1.      This is an action on behalf of Plaintiff asserting violations of Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a) and a shareholder class action on behalf of Plaintiff and the other public holders of shares of Metals USA Holdings Corp. ("Metals USA" or the "Company") common stock asserting common law claims at Delaware law.  Defendants are

Metals USA and its directors as well as Reliance Steel & Aluminum Co. ("Reliance") and Apollo Management V, L.P. Plaintiff seeks, *inter alia*, injunctive relief herein to enjoin the consummation of an agreement pursuant to which Reliance will acquire all outstanding shares of Metals USA's common stock at a price of $20.65 per share in cash (the "Sale Agreement"). Plaintiff alleges that Defendants have provided materially incomplete information to it and Metals USA shareholders, inhibiting their ability to make an informed decision concerning the Sale Agreement.   Plaintiff also alleges that Defendant Apollo Management V, L.P. and its affiliates (collectively, "Apollo"), who together own a majority of the Company's outstanding shares and control the Company, have used their control of the Company to cause it to enter into the Sale Agreement in violation of their fiduciary duties to Plaintiff and the Company's other public shareholders.  Plaintiff also alleges that through the process by which they caused Metals USA to enter into the Sale Agreement, Metals USA's directors breached and are continuing to breach their common law fiduciary duties of care, good faith, loyalty and candor.

## JURISDICTION

2.     Plaintiff asserts a claim under Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78n(a), and the rules and regulations promulgated thereunder, including SEC Regulation 14a-9, 17 C.F.R. 240.14a-9. This Court thus has jurisdiction over this action pursuant to Section 27 of the Securities Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. § 1331.  This Court also has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367.

3.     Venue is proper in this judicial district pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b), because the transactions which gave rise to this action occurred in substantial part in the Southern District of Florida, and because Metals USA is

headquartered and located at 2400 E. Commercial Blvd., Suite 905, Fort Lauderdale, FL 33308 within the Southern District of Florida.

## PARTIES

4.      Plaintiff Savior Associates is an owner of Metals USA common stock and has been the owner of such common stock at all relevant times since at least March, 2011.

5.      Defendant Metals USA is a publicly traded company that maintains its principal executive offices at 2400 E. Commercial Blvd., Suite 905, Fort Lauderdale, FL 33308.  Metals USA is a metal service center company that provides processed carbon steel, stainless steel, aluminum, red metals and manufactured metal components.  The Company serves as an intermediary between primary metal producers and end-users and operates over forty-eight metal service centers in the United States.  Metals USA is traded on the New York Stock Exchange under the ticker symbol MUSA.  This Court has jurisdiction over Metals USA because Metals USA is headquartered in the Southern District of Florida and many of Metal USA's actions challenged in this Complaint originated in or occurred in substantial part in the Southern District of Florida.

6.      Defendant C. Lourenco Goncalves ("Mr. Goncalves") has served as President, Chief Executive Officer and a director of the Company since February 2003, and as Chairman of the Company's Board of Directors since May 1, 2006.   In connection with the Sale Agreement, Mr. Goncalves is entitled to cash payments of $2,848,028.00 for the accelerated vesting of his unvested Company equity awards.  In addition, Mr. Goncalves will also be entitled to cash severance payments of $4,066,630.00 and benefits valued at $66,539.00 upon a qualifying termination of his employment with the Company.  Further, for six years following the effective time of the Sale Agreement Mr. Goncalves will be granted a right to indemnification for his

actions or failure to act prior to consummation of the Sale Agreement. This Court has jurisdiction over Mr. Goncalves because Metals USA is headquartered in the Southern District of Florida and many of Mr. Goncalves's actions challenged in this Complaint occurred in substantial part in, were directed at, and/or intended to have their primary effect in, this District.

7.      Defendant Eric L. Press ("Mr. Press") has served as a director of the Company since May, 2005. Mr. Press is a partner of an affiliate of Apollo, Apollo Management, L.P., and was appointed to the Company's Board by Apollo. Prior to joining Apollo in 1998, Mr. Press was associated with the law firm of Wachtell, Lipton, Rosen & Katz. In connection with the Sale Agreement, Mr. Press is entitled to payment of approximately $180,443.00 for his unvested Company stock options and restricted shares. Further, for six years following the effective time of the Sale Agreement Mr. Press will be granted a right to indemnification for his actions or failure to act prior to consummation of the Sale Agreement. This Court has jurisdiction over Mr. Press because Metals USA is headquartered in the Southern District of Florida and many of Mr. Press's actions challenged in this Complaint occurred in substantial part in, were directed at, and/or intended to have their primary effect in, this District.

8.      Defendant M. Ali Rashid ("Mr. Rashid") has served as a director of the Company since May, 2005. Mr. Rashid is a partner of an affiliate of Apollo, Apollo Management, L.P., where he has been employed since 2000, and was appointed to the Company's Board by Apollo. Prior to that time, Mr. Rashid was employed by the Goldman Sachs Group. In connection with the Sale Agreement, Mr. Rashid is entitled to payment of approximately $180,443.00 for his unvested Company stock options and restricted shares. Further, for six years following the effective time of the Sale Agreement Mr. Rashid will be granted a right to indemnification for his actions or failure to act prior to consummation of the Sale Agreement. This Court has

4

jurisdiction over Mr. Rashid because Metals USA is headquartered in the Southern District of Florida and many of Mr. Rashid's actions challenged in this Complaint occurred in substantial part in, were directed at, and/or intended to have their primary effect in, this District.

9.      Defendant Matthew R. Michelini ("Mr. Michelini") has served as a director of the Company since May, 2005.  Mr. Michelini is a principal of an affiliate of Apollo, Apollo Management, L.P., and was appointed to the Company's Board by Apollo.  In connection with the Sale Agreement, Mr. Michelini is entitled to payment of approximately $180,443.00 for his unvested Company stock options and restricted shares.  Further, for six years following the effective time of the Sale Agreement, Mr. Michelini will be granted a right to indemnification for his actions or failure to act prior to consummation of the Sale Agreement.  This Court has jurisdiction over Mr. Michelini because Metals USA is headquartered in the Southern District of Florida and many of Mr. Michelini's actions challenged in this Complaint occurred in substantial part in, were directed at, and/or intended to have their primary effect in, this District.

10.      Defendant John T. Baldwin ("Mr. Baldwin") has served as a director of the Company since January, 2006.  In connection with the Sale Agreement, Mr. Baldwin is entitled to payment of approximately $180,443.00 for his unvested Company stock options and restricted shares.  Further, for six years following the effective time of the Sale Agreement Mr. Baldwin will be granted a right to indemnification for his actions or failure to act prior to consummation of the Sale Agreement.  This Court has jurisdiction over Mr. Baldwin because Metals USA is headquartered in the Southern District of Florida and many of Mr. Baldwin's actions challenged in this Complaint occurred in substantial part in, were directed at, and/or intended to have their primary effect in, this District.

11.      Defendant Larry K. Powers ("Mr. Powers") has served as a director of the

Company since April, 2010.  In connection with the Sale Agreement, Mr. Powers is entitled to payment of approximately $180,443.00 for his unvested Company stock options and restricted shares.  Further, for six years following the effective time of the Sale Agreement Mr. Powers will be granted a right to indemnification for his actions or failure to act prior to consummation of the Sale Agreement.   This Court has jurisdiction over Mr. Powers because Metals USA is headquartered in the Southern District of Florida and many of Mr. Powers' actions challenged in this Complaint occurred in substantial part in, were directed at, and/or intended to have their primary effect in, this District.

12.    Defendant Mark A. Slaven ("Mr. Slaven") has served as a director of the Company since April, 2010.  In connection with the Sale Agreement, Mr. Slaven is entitled to payment of approximately $180,443.00 for his unvested Company stock options and restricted shares.  Further, for six years following the effective time of the Sale Agreement Mr. Slaven will be granted a right to indemnification for his actions or failure to act prior to consummation of the Sale Agreement.   This Court has jurisdiction over Mr. Slaven because Metals USA is headquartered in the Southern District of Florida and many of Mr. Slaven's actions challenged in this Complaint occurred in substantial part in, were directed at, and/or intended to have their primary effect in, this District.

13.    Defendant Reliance Steel & Aluminum Co. is a publicly traded company which maintains its principal executive offices at 350 South Grand Avenue, Suite 5100, Los Angeles, California 90071.  Reliance is the largest metal service center in North America.  It provides metals processing services and distributes a line of over 100,000 metal products to customers in a broad range of industries.  Reliance's stock is traded on the New York Stock Exchange under the symbol "RS."  This Court has jurisdiction over Reliance because many of Reliance's actions

challenged in this Complaint occurred in substantial part, were directed at, and/or intended to have their primary effect in, the Southern District of Florida.

14.     Defendant Apollo Management V, L.P. is an affiliate of Apollo Global Management, LLC, an investment entity traded on the New York Stock Exchange under the symbol "APO."  Apollo Management V, L.P. and its affiliates collectively own over 53% of the Company's outstanding stock.  This Court has jurisdiction over Apollo because many of Apollo's actions challenged in this Complaint occurred in substantial part, were directed at, and/or intended to have their primary effect in, the Southern District of Florida.

15.     The Defendants identified in paragraphs 6 through 12 collectively constitute the entirety of the board of directors of Metals USA (the "Board").  These seven individuals are hereinafter sometimes referred to collectively as the "Individual Defendants."

16.     Each Defendant herein is sued individually.  The Individual Defendants are also sued in their capacity as directors of Metals USA.  The liability of each Defendant arises from the fact that they have engaged in all or part of the unlawful acts, plans, schemes, or transactions complained of herein.

## CLASS ACTION ALLEGATIONS

17.     With respect to Plaintiff's Delaware law claims only, Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all Metals USA public common stockholders as of February 6, 2013 and their successors in interest (the "Class").  Excluded from the Class are Defendants, Metals USA's and Reliance's directors and executive officers, their immediate families, and the heirs and assigns of the above.

18.     This action is properly maintainable as a class action.

19.     The class is so numerous that joinder of all members is impracticable.  As of

February 1, 2012, Metals USA had approximately 37 million shares of common stock outstanding.

20.     There are questions of law or fact which are common to the Class including, *inter alia*, the following:

(a)     whether the Proxy Statement (as defined below) is materially incomplete and misleading;

(b)     whether the proposed transaction is grossly unfair to the Class;

(c)     whether Plaintiff and the other members of the Class would be irreparably damaged were the transaction complained of herein consummated; and

(d)     whether Defendants have breached their fiduciary and other common law duties owed by them to Plaintiff and the other members of the Class.

21.     Plaintiff's claims are typical of the claims of the other members of the Class in that it and all members of the Class have suffered and will suffer the same damage from Defendants' actions.

22.     Plaintiff will fairly and adequately protect the interests of each member of the Class.   Plaintiff is a public shareholder of Metals USA who is committed to the vigorous prosecution of this action and has retained counsel competent and experienced in this type of litigation.

23.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendants, or adjudications with respect to individual members of the Class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or

impede their ability to protect their interests.

24.     Defendants have acted, or refused to act, on grounds generally applicable to, and causing injury to, the Class and, therefore, preliminary and final injunctive relief on behalf of the Class as a whole is appropriate.

## SUBSTANTIVE ALLEGATIONS

**A.     Metals USA Is a Strong Company with the Potential for Greater Growth**

25.     In Metals USA most recent annual report on Form 10K filed with the SEC on or about March 14, 2012 (the "2012 Annual Report"), the Company professed its positive outlook on its future long-term growth as follows:

> *We believe that long-term growth opportunities for metal service centers will continue to expand* as both primary metal producers and end-users increasingly seek to have their metal processing and inventory management requirements met by value-added metal service centers. Although the service center industry remains fragmented with approximately 1,200 companies competing in North America, *we believe larger service center businesses with greater scale and financial flexibility, like ours, enjoy significant advantages* over smaller companies such as the ability to obtain higher discounts associated with volume purchases, the breadth of products and value-added services to meet the diverse needs of key end-use markets, and the more sophisticated logistics capabilities necessary to serve national accounts.
>
> *            *            *            *            *            *
>
> Historically, we believe we have been able to compete effectively because of our high levels of service, broad-based inventory, knowledgeable and trained sales force, integrated computer systems, modern equipment, numerous locations, geographic dispersion, operational economies of scale and combined purchasing volume. *Furthermore, we believe our liquidity and overall financial position affords us a good platform with which to compete with our peers in the industry.*

(emphasis added).

26.     Further, in an October 22, 2012 press release announcing that the Company had authorized the payment of a regular annual cash dividend on the Company's common stock,

9

CEO Goncalves stated as follows:

> ***Our adoption of a regular cash dividend demonstrates our continuing solid financial performance, confidence in our business, financial prospects and long-term strategy, and our commitment to maximize shareholder value.*** Our financial results over the past several years demonstrate that our business model produces strong cash flows through the cycle. Specifically, we have significantly deleveraged our balance sheet and maintained a strong liquidity position, while at the same time completing a number of accretive acquisitions and organic investments. ***We will continue to operate and manage our business as usual, and we are confident that our strong free cash flow generation will allow us to continue deleveraging, execute on our disciplined growth strategy and pay cash dividends.***

(emphasis added).

27.     Financial analysts covering the Company concur with the Company's above-mentioned assessment of its future prospects. In this regard, in an analyst report dated November 29, 2012, Sidoti & Company, LLC stated as follows:

> ***After talking with management (CFO Robert McPherson) over the course of the day, our main takeaway is that business conditions remain favorable across most end markets, especially oil services, marine, and electrical equipment, while pricing appears to have firmed, with the notable exception of steel plate, which continues to be squeezed by imports. We agree with management's view that customer activity will pick up in 2013 as the uncertain U.S. fiscal situation moves toward resolution, and that customers will be more inclined to rebuild their metal inventories in a rising price environment.*** Further, it is MUSA's contention that current customer inventory levels are sub-optimal for efficient manufacturing.

(emphasis added).

**B.      <ins>Apollo Used Its Control of the Company to Cause It to Enter the Sale Agreement Pursuant to an Inadequate Process and at an Unfair Price</ins>**

28.     Despite the Company's prospects for growth as acknowledged by its senior management, on or about February 6, 2013, Reliance and Metals USA announced that they had entered into the Sale Agreement pursuant to which Reliance would acquire all of the outstanding

shares of Metals USA for $20.65 per share in cash. That $20.65 per share price is inadequate and fails to maximize the value of the Company's sale for outside shareholders. Indeed, it is a discount to the $21.00 per share price paid in the Company's initial public offering less than three years ago.

29.     In this regard, the sale process was driven by the Company's majority shareholder, Apollo, which, as alleged below, has succeeded in siphoning off substantial wealth from the Company. Indeed, Apollo's actions with respect to the Company are in keeping with the *modus operandi* of private equity funds like Apollo which involve taking an undervalued asset private, extracting its value for its own gain and thereafter taking it public again once it has reaped all the value it can, often within a 5-10 year time-frame, in order to continue the same cycle with another entity.[1] This *modus operandi* is perfectly illustrated in Apollo's investment in Metals USA. In this regard, public sources indicate that Apollo, with the help of President and CEO Goncalves, took Metals USA private in 2005 with an initial investment of only about $136 million. In 2006 and 2007, however, Apollo caused the Company to pay it more than $290 million in cash dividends, which dividends were funded by Metals USA incurring debt*, some of which was issued by Apollo itself*. Desiring its debt by the Company to be repaid, in 2010 Apollo took the Company public at a price of $20.65 per share, but retained control of approximately 64% of the Company. The Company's 2010 IPO not only enabled the Company to repay its debt to Apollo – debt the Company had incurred in order to pay dividends to Apollo, but also garnered a profit of 266% for Apollo. Now, having completed its plans with respect to Metals USA, Apollo desires to divest itself of its Metals USA interests. However, as the Company's majority shareholders, owning approximately 53% of the Company's outstanding stocks, Apollo

---

[1] *See In re Appraisal of Metromedia Int'l Group, Inc.*, 971 A.2d 893, 904-5 (Del. Ch. 2009); *see also In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 186 n.42 (Del. Ch. 2007).

and its affiliates are unable to profitably sell their shares on the open market.[2]   Therefore, the

only way to divest themselves of their interests in the Company was to effectuate a sale of the

entire Company.

30.   That Apollo's interests are not aligned with the interests of the Company's other

public shareholders, is also acknowledged in the Company's 2012 Annual Report and borne out

by Apollo's actions.   In this regard, Apollo's majority ownership enables Apollo to effectively

control the Company as well as a majority of its directors.   Indeed, the 2012 Annual Report

stated as follows with regard to Apollo's control of the Company:

> ***We are controlled by Apollo and its affiliates, and their interests as
> equity holders may conflict with yours.***
>
> We are an affiliate of, and are controlled by, Apollo and its affiliates.   ***The
> interests of Apollo and its affiliates may not always be aligned with
> yours.   For example, Apollo may have an interest in pursuing
> acquisitions, divestitures, financings or other transactions that, in their
> judgment, could enhance their equity investment, even though these
> transactions might involve risks to the non-affiliated holders of our
> common stock*** or holders of our debt if the transactions resulted in our
> being more highly leveraged ***or significantly changed the nature of our
> business operations or strategy***.   In addition, if we encounter financial
> difficulties, or if we are unable to pay our debts as they mature, the

---

[2] *See generally In re Answers Corp. S'holders Litig.*, 2012 Del. Ch. LEXIS 76, *24 (April 11, 2012) ("'Liquidity has been recognized as a benefit that may lead directors to breach their fiduciary duties.'  Although 'all of . . . [Answers'] shareholders received [the same consideration] in the Merger, liquidity was a benefit unique to . . . [Redpoint].'   According to the Complaint, '[Redpoint's] interest in a prompt liquidation event conflicted with those of common shareholders who, unlike Redpoint, could sell their shares into the market….'   Moreover, the Complaint asserts that Beasley and Dyal's desire to gain liquidity for Redpoint caused them to manipulate the sales process.   Thus, the Complaint alleges sufficient facts to suggest that Beasley and Dyal were interested in the Merger."); *N.J. Carpenters Pension Fund v. infoGROUP, Inc.*, 2011 Del. Ch. LEXIS 147, *33-34 (October 6, 2011) ("These well-pleaded facts support a reasonable inference that, with the exception of Gupta, *info*GROUP's other shareholders held relatively small, liquid positions. Thus, while the other shareholders did receive [the same consideration], liquidity was not a benefit to them, as it was to Gupta, because their investment in *info*GROUP stock was already a relatively liquid asset prior to the Merger."); *Roche v. Boston Safe Deposit & Trust Co.*, 391 Mass. 785, 789-91 (Mass. 1984) (discussing generally marketability problems in trading a large block of securities).

interests of Apollo might conflict with those of the non-affiliated holders of our common stock or the holders of our debt.  In that situation, for example, the non-affiliated holders of our common stock or the holders of our debt might want us to raise additional equity to reduce our leverage and pay our debts, while Apollo might not want to increase their investment in us or have their ownership diluted and instead choose to take other actions, such as selling our assets.  Furthermore, Apollo and its affiliates have no continuing obligation to provide us with debt or equity financing.  Additionally, Apollo and certain of its affiliates are in the business of making investments in businesses engaged in the metals service industry that complement or directly or indirectly compete with certain portions of our business.  Further, if they pursue such acquisitions in the metals service industry, those acquisition opportunities may not be available to us.  ***So long as Apollo and its affiliates continue to indirectly own a significant amount of our equity, even if such amount is less than 50%, they will continue to be able to strongly influence or effectively control our business decisions.***

(emphasis added.)

31.     Further, a majority of the Company's directors are beholden to Apollo.  In this regard, three of Metals USA's directors are partners at Apollo or its affiliates.  In addition, the Company's President and CEO, Mr. Goncalves, has conflicting ties to Apollo having previously worked with Apollo to take the Company private in 2005 and having participated in owning the Company with Apollo and having retained his position as the Company's President and CEO as a result of Apollo's largesse.

32.     Notwithstanding the Company's acknowledgment that Apollo's interests are not aligned with the Company's public shareholders, the members of the Company's Board essentially surrendered their responsibilities as directors to Apollo.  In this regard, instead of forming a special committee of independent directors to negotiate the Sale Agreement, the Board delegated the responsibility of negotiating the Sale Agreement to Apollo's representative, director Mr. Rashid, who proceeded to negotiate solely with Reliance.  Further, instead of retaining independent financial advisors to advise on the sale of the Company, the Board hired

13

investment banks with extensive ties and loyalties to Apollo and its affiliates as well as to

Reliance.  Specifically, the excerpt below from the Proxy Statement indicates that Goldman,

Sachs & Co. has both worked for, as well as co-invested with, Apollo and has worked for

Reliance:

> Goldman Sachs has provided, and may provide in the future, certain investment banking services to Metals USA and its affiliates from time to time for which the Investment Banking Division of Goldman Sachs received, and may receive, customary compensation, including having acted as joint bookrunner in connection with the public offering of 4,000,000 shares of Metals USA common stock in August 2012. *Goldman Sachs also has provided certain investment banking services to Reliance and its affiliates from time to time for which the Investment Banking Division of Goldman Sachs has received, and may receive, compensation*, including having acted as a participant in Reliance's unsecured revolving credit facility (aggregate principal amount $1,500 million) since July 2011*.  Goldman Sachs also has provided certain investment banking services to Apollo Global Management, LLC and its affiliates and portfolio companies from time to time for which the Investment Banking Division of Goldman Sachs has received, and may receive, compensation, including having acted as co-lead manager with respect to the initial public offering of 29,757,559 shares of Apollo Global Management, LLC in March 2011; as financial advisor to Apollo Global Management, LLC with respect to the acquisition of Core Media Group Inc. (f/k/a CKX Inc.) in June 2011; as co-manager and participant in a $1.25 billion secured debt offering for Caesars Entertainment, a portfolio company of funds affiliated with Apollo Global Management, LLC, in February 2012; as joint bookrunner with respect to the initial public offering of 23,684,211 shares of Rexnord Corp., a portfolio company of funds affiliated with Apollo Global Management, LLC, in March 2012; as financial advisor to AMC Entertainment, a former portfolio company of funds affiliated with Apollo Global Management, LLC, in connection with its sale in September 2012; as joint bookrunner with respect to the initial public offering of 29,411,764 shares of Berry Plastics Group, Inc., a portfolio company of funds affiliated with Apollo Global Management, LLC, in October 2012; as joint lead manager with respect to the initial public offering of 40,000,000 shares of Realogy Holdings Corp., a portfolio company of funds affiliated with Apollo Global Management, LLC, in October 2012; and* <u>*as joint bookrunner with respect to the initial public offering of 23,529,412 shares of Norwegian Cruise Line Holdings Ltd., a portfolio company of funds affiliated with Apollo Global Management, LLC, in January 2013*</u>*.* Goldman Sachs may also in the future provide

investment banking services to Metals USA, Reliance and their respective affiliates and Apollo Global Management, LLC and its affiliates and its affiliated portfolio companies for which the Investment Banking Division of Goldman Sachs may receive compensation. ***Affiliates of Goldman Sachs also may have co-invested with Apollo Global Management, LLC and its affiliates from time to time and may have invested in limited partnership units of affiliates of Apollo Global Management, LLC from time to time and may do so in the future.***

Indeed, <u>Goldman Sachs was working for Apollo at the same time</u> it was rendering advice to Metals USA on its sale.

33.     Similarly, Morgan Stanley & Co., LLC, the second investment bank retained by the Board to opine on the consideration to be received by Metals USA shareholders other than Apollo and its affiliates, also has extensive ties to Apollo.  In this regard, the Proxy Statement provides as follows with regard to Morgan Stanley's relationship with Apollo:

> ***In the two years prior to the date hereof, Morgan Stanley has provided financial advisory and financing services to Metals USA and affiliates of the Apollo Funds and has received customary fees in connection with such services.***  Morgan Stanley may also seek to provide such services to Reliance, the Apollo Funds and/or Metals USA in the future and would expect to receive fees for the rendering of those services.

34.     Despite the inadequate sale process in which they engaged, Apollo has further locked up the sale of the Company to Reliance by entering into a voting agreement with Reliance pursuant to which Apollo and its affiliates agreed to vote the approximately 53% of the Company's stock they own in favor of the Sale Agreement.  Given that adoption of the Sale Agreement is contingent upon approval of a majority of the Company's shares outstanding, the voting agreement effectively ensures that the sale to Reliance is accomplished without any input at all from the Company's minority public shareholders.

35.     Further, although the Company is ostensibly engaged in a go-shop process, that process too is flawed both because the entirety of the decision to sell (as opposed to remain independent) at this inopportune time was driven by Apollo and because Apollo's demonstrated

preference to sell the Company to Reliance effectively deters potential buyers.

**C.**     **All of Metals USA's Directors Will Receive Personal Benefits That They Would Not Otherwise Receive at This Time Absent the Sale Agreement**

36.     Not only are all of the members of Metals USA's Board controlled by Apollo, but each has interests in the Sale Agreement that are different from or in addition to the interests of the Company's stockholders as set forth below.

(a)     **Payments to the Individual Defendants for their Unvested Options and Restricted Stock Awards.**   In connection with consummation of the Sale Agreement, the Individual Defendants will receive the following cash payments for their accelerated stock options and restricted stock awards:

| Director | Unvested Options | Value of Unvested Stock | Restricted Stock | Value of Restricted Stock | Total Value of Unvested and Restricted Stock |
|---|---|---|---|---|---|
| C. Lorenco Goncalves | 180,000 | $1,519,200.00 | 64,350 | $1,328,828 | $2,848,028.00 |
| Eric L. Press | 10,000 | $84,400.00 | 4,651 | $96,043.00 | $180,443.00 |
| M. Ali Rashid | 10,000 | $84,400.00 | 4,651 | $96,043.00 | $180,443.00 |
| Matthew R. Michelini | 10,000 | $84,400.00 | 4,651 | $96,043.00 | $180,443.00 |
| John T. Baldwin | 10,000 | $84,400.00 | 4,651 | $96,043.00 | $180,443.00 |
| Larry K. Powers | 10,000 | $84,400.00 | 4,651 | $96,043.00 | $180,443.00 |
| Mark A. Slaven | 10,000 | $84,400.00 | 4,651 | $96,043.00 | $180,443.00 |

(b)     **Golden Parachute Payments to Mr. Goncalves.**   In addition to payments for his unvested options and restricted stock, Mr. Goncalves is also expected to receive golden parachute cash payments of $4,066,630.00 and benefits valued at $66,539.00 following a qualifying termination of his employment.

(c)     **Indemnification.**   Further, each of the Individual Defendants will be granted rights to indemnification for his action or failure to act prior to the consummation of the Sale Agreement (the "Effective Time") for six years after the Effective Time – thereby insulating

them from all liability arising from the Sale Agreement.

37.    Notably, the Individual Defendants would not receive the payments and personal benefits described above now absent the Sale Agreement.  Therefore, each of the Individual Defendants had and has a conflict of interest with regard to the Sale Agreement.

**D.**    **Defendants' Materially False and Misleading Statements and Omissions**

38.    In connection with the Sale Agreement, the Individual Defendants caused the Company to file with the SEC and make available to Metals USA's shareholders via the Internet a Proxy Statement (the "Proxy Statement") in connection with soliciting shareholders to vote on the Sale Agreement.  However, the Proxy Statement is deficient in that it misrepresents and/or omits, *inter alia*, material information as set forth below:

(i)    According to the Proxy Statement, Goldman Sachs and its affiliates and employees, and funds or other entities in which they invest or with which they co-invest, may at any time purchase, sell, hold or vote long or short positions and investments in securities, derivatives, loans, commodities, currencies, credit default swaps and other financial instruments of Reliance, any of their respective affiliates and third parties, including the Apollo Funds, and its affiliates and portfolio companies, or any currency or commodity that may be involved in the transaction contemplated by the merger agreement for the accounts of Goldman Sachs and its affiliates and employees and their customers. The Proxy Statement is deficient because it fails to disclose the value of Goldman Sachs's holdings in these regards.

Information regarding the conflicts of interest of the Company's financial advisor is material and must be disclosed.

(ii)    According to the Proxy Statement, Goldman Sachs has provided certain investment banking services to Reliance and its affiliates from time to time for which the Investment Banking Division of Goldman Sachs has received, and may receive, compensation, including having acted as a participant in Reliance's unsecured revolving credit facility (aggregate principal amount $1,500 million) since July 2011. Goldman Sachs also has provided certain investment banking services to Apollo Global Management, LLC and its affiliates and portfolio companies from time to time for which the Investment Banking Division of Goldman Sachs has received, and may receive, compensation, including having acted as co-lead manager with respect to the initial public offering of 29,757,559 shares of Apollo Global Management, LLC in March 2011; as financial advisor to

Apollo Global Management, LLC with respect to the acquisition of Core Media Group Inc. (f/k/a CKX Inc.) in June 2011; as co-manager and participant in a $1.25 billion secured debt offering for Caesars Entertainment, a portfolio company of funds affiliated with Apollo Global Management, LLC, in February 2012; as joint bookrunner with respect to the initial public offering of 23,684,211 shares of Rexnord Corp., a portfolio company of funds affiliated with Apollo Global Management, LLC, in March 2012; as financial advisor to AMC Entertainment, a former portfolio company of funds affiliated with Apollo Global Management, LLC, in connection with its sale in September 2012; as joint bookrunner with respect to the initial public offering of 29,411,764 shares of Berry Plastics Group, Inc., a portfolio company of funds affiliated with Apollo Global Management, LLC, in October 2012; as joint lead manager with respect to the initial public offering of 40,000,000 shares of Realogy Holdings Corp., a portfolio company of funds affiliated with Apollo Global Management, LLC, in October 2012; and as joint bookrunner with respect to the initial public offering of 23,529,412 shares of Norwegian Cruise Line Holdings Ltd., a portfolio company of funds affiliated with Apollo Global Management, LLC, in January 2013. The Proxy Statement is deficient because it fails to disclose (a) the compensation Goldman Sachs received for services it has rendered to Reliance and its affiliates and (b) the compensation Goldman Sachs received for services it has rendered to Apollo Global Management, LLC and its affiliates and portfolio companies.

Information regarding the conflicts of interest of the Company's financial advisor is material and must be disclosed.

(iii)   According to the Proxy Statement, in the two years prior to the date thereof, Morgan Stanley has provided financial advisory and financing services to affiliates of the Apollo Funds and has received customary fees in connection with such services. The Proxy Statement is deficient because it fails to disclose the value of the compensation that Morgan Stanley has received for services it has rendered to affiliates of the Apollo Funds, including the fees received for work done at the same time that Morgan Stanley was advising the Company on the Sale Agreement

Information regarding the conflicts of interest of the Company's financial advisor is material and must be disclosed.

(iv)   According to the Proxy Statement, Morgan Stanley, its affiliates, directors and officers may at any time invest on a principal basis or manage funds that invest, hold long or short positions, finance positions, and may trade or otherwise structure and effect transactions, for their own account or the accounts of its customers, in debt or equity securities or loans of Reliance, the Apollo Funds or any other company, or any currency or commodity, that may be involved in this merger, or any related derivative instrument. The Proxy Statement is deficient because it fails to disclose the value of Morgan Stanley's holdings in these regards.

Information regarding the conflicts of interest of the Company's financial advisor is material and must be disclosed.

(v)     According to the Proxy Statement, from time to time in recent years, David H. Hannah, the Chairman of the Board and Chief Executive Officer of Reliance, and M. Ali Rashid, a member of the board of directors of Metals USA and a Senior Partner of an affiliate of the Apollo Funds, which own approximately 53% of the outstanding shares of Metals USA common stock, have spoken to each other about developments in the industries in which Reliance and Metals USA participate and about Reliance's theoretic interest in a possible strategic transaction. The Proxy Statement is deficient because it fails to disclose (a) when Mr. Hannah and Mr. Rashid first began these discussions, (b) how these discussions originated, and (c) the nature of their relationship.

Information regarding the conflicts of interest of the Company's directors is material and must be disclosed.

(vi)    According to an annual report filed by Metals USA with the SEC on Form 10-K on or about March 14, 2012, Metals USA is an affiliate of, and is controlled by, Apollo and its affiliates. The interests of Apollo and its affiliates may not always be aligned with non-affiliated holders of the Company's common stock. For example, Apollo may have an interest in pursuing acquisitions, divestitures, financings or other transactions that, in their judgment, could enhance their equity investment, even though these transactions might involve risks to the non-affiliated holders of the Company's common stock or holders of the Company's debt if the transactions resulted in the Company being more highly leveraged or significantly changed the nature of the Company's business operations or strategy. So long as Apollo and its affiliates continue to indirectly own a significant amount of the Company's equity, even if such amount is less than 50%, they will continue to be able to strongly influence or effectively control the Company's business decisions. Given this admitted conflict of interest, the Proxy Statement is deficient because it fails to disclose the Board's rationale for not forming a special committee to oversee the sale process and instead authorizing Mr. Rashid, a Senior Partner of an affiliate of the Apollo Funds, to negotiate with Reliance.

Information regarding the conflicts of interest of the Company's directors is material and must be disclosed.

(vii)   According to the Proxy Statement, Goldman Sachs performed, *inter alia*, a *Comparison of Current Trading Multiples* analysis, an *Implied Multiples Analysis*, a *Summary of Selected Precedent Transactions* analysis, and a *Public Deal Premia Review* analysis. The Proxy Statement is deficient because it fails to disclose the per share value(s) of Metals USA implied by each of these analyses.

The criteria used by a financial advisor to render its fairness opinion is material to the public shareholders of Metal USA in determining how much weight to place on the fairness opinion and must therefore be disclosed. Specifically, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Only providing some of that information is insufficient to fulfill the duty of providing a fair summary of the substantive work performed by the investment bankers upon whose advice the recommendation of the Board–that shareholders vote their shares in favor of the Sale Agreement–relies.

(viii)   According to the Proxy Statement, in arriving at its opinion, Morgan Stanley considered the results of all of its analyses as a whole and did not attribute any particular weight to any analysis or factor it considered. Morgan Stanley believes that selecting any portion of its analyses, without considering all analyses as a whole, would create an incomplete view of the process underlying its analyses and opinion. In addition, Morgan Stanley may have given various analyses and factors more or less weight than other analyses and factors, and may have deemed various assumptions more or less probable than other assumptions. As a result, the ranges of valuations resulting from any particular analysis described above should not be taken to be Morgan Stanley's view of the actual value of Metals USA.  The Proxy Statement is deficient because it fails to disclose (a) to which analyses and factors Morgan Stanley gave more weight, (b) which assumptions Morgan Stanley deemed more probable, and (c) Morgan Stanley's view of the actual value of Metals USA.

The criteria used by a financial advisor to render its fairness opinion is material to the public shareholders of Metal USA in determining how much weight to place on the fairness opinion and must therefore be disclosed. Specifically, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Only providing some of that information is insufficient to fulfill the duty of providing a fair summary of the substantive work performed by the investment bankers upon whose advice the recommendation of the Board–that shareholders vote their shares in favor of the Sale Agreement–relies.

## FIRST CLAIM FOR RELIEF

### (Individual Claim for Violations of Section 14(a) of the Exchange Act)

### (Against Metals USA and the Individual Defendants)

39.   Plaintiff repeats and realleges the foregoing allegations as if set forth herein at length.

40.     Metals USA and the Individual Defendants violated Section 14(a) of the Exchange Act by making a solicitation by means of a proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing statements which, at the time and in the light of the circumstances under which it was made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading.

41.     Metals USA and the Individual Defendants knew or recklessly disregarded the fact that their statements and/or conduct with respect to the offers described herein included the material omissions described herein.

42.     As a direct and proximate result of Metals USA and the Individual Defendants' unlawful course of conduct in violation of Section 14(a) of the Exchange Act, Plaintiff has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether to vote its shares for the Sale Agreement or seek appraisal, for which monetary damages alone are insufficient compensation.

### SECOND CLAIM FOR RELIEF

**(Class Claims Under Delaware Law for Breach of the
Fiduciary Duties of Care, Good Faith and Loyalty)**

**(Against the Individual Defendants)**

43.     Plaintiff repeats and realleges all previous allegations as if set forth in full herein.

44.     By reason of the foregoing, the Individual Defendants have breached their fiduciary duties of, *inter alia*, good faith, loyalty, fair dealing, and due care under Delaware law to Plaintiff and Class members and/or aided and abetted in the breach of those fiduciary duties.

45.      By reason of the foregoing, Plaintiff and each member of the Class are suffering irreparable injury, including injury for which there is no adequate remedy at law.

## THIRD CLAIM FOR RELIEF

**(Class Claims Under Delaware Law for Breach of the
Fiduciary Duties of Care, Good Faith and Loyalty)**

**(Against Apollo as Majority Shareholder)**

46.     Plaintiff  repeats and realleges all previous allegations as if set forth in full herein.

47.     By reason of the foregoing, Apollo has engaged in oppressive conduct toward Metal USA's minority shareholders and has breached its fiduciary duties of, *inter alia*, good faith, loyalty, fair dealing, and due care under Delaware law to Plaintiff and Class members and/or aided and abetted in the breach of those fiduciary duties.

48.      By reason of the foregoing, Plaintiff and each member of the Class are suffering irreparable injury, including injury for which there is no adequate remedy at law.

## FOURTH CLAIM FOR RELIEF

**(Class Claims Under Delaware Law for Breach of the Fiduciary Duty of Candor)**

**(Against Metals USA and the Individual Defendants)**

49.     Plaintiff repeats and realleges all previous allegations as if set forth in full herein.

50.     Under Delaware Law, the Individual Defendants' fiduciary duties require them to disclose to Plaintiff and the Class all material information in the Proxy Statement they mailed to shareholders recommending that shareholders vote their shares for the Sale Agreement.

51.     As set forth above, the Individual Defendants have breached their fiduciary duty by circulating a proxy statement with material omissions.

52.     By reason of the foregoing, Plaintiff and each member of the Class are suffering irreparable injury, including injury for which there is no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF

### (Class Claim for Aiding and Abetting Under Delaware Law)

### (Against Reliance)

53.     Plaintiff repeats and realleges all previous allegations as if set forth in full herein.

54.     The Individual Defendants owed Plaintiff and Metals USA's shareholders duties of care, good faith and loyalty.  As earlier alleged, the Individual Defendants breached these fiduciary duties.  Reliance has aided and abetted the Individual Defendants in the breaches of their fiduciary duties to Metals USA's shareholders by, among other things, (a) negotiating a sale of the Company to Reliance in an inadequate sale process and with a director it knew or should have known had a conflict of interest, (b) requiring the Company to pay a termination fee of $23,800,000 in the event that it agrees to a superior proposal to sell the Company, and (c) entering into voting agreements which commit Apollo and its affiliates to the Individual Defendants and their affiliates to vote shares representing 53% of Metals USA's outstanding shares in favor of the Sale Agreement and against any other proposal to acquire the Company.

55.     Further, the proposed sale of Metals USA to Reliance could not take place without the knowing participation of Reliance.

56.     By reason of the foregoing, Plaintiff and each member of the Class are suffering irreparable injury, including injury for which there is no adequate remedy at law.

**WHEREFORE,** Plaintiff demands a jury trial on all claims so triable, and judgment as follows:

a.     declaring that this action is properly maintainable as a class action, and that Plaintiff is a proper class representative;

      b.       preliminarily and permanently enjoining Defendants and all persons acting in concert with them, from proceeding with, consummating or closing the proposed transaction;

      c.       in the event the Sale Agreement is consummated, rescinding it and setting it aside;

      d.       awarding Plaintiff and the Class compensatory and/or rescissory damages, as well as pre and post-trial interest, as allowed by law;

      e.       awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees and other costs; and

      f.       granting such other and further relief as the Court may deem just and proper.

Dated: March 2, 2013

**VIANALE & VIANALE  LLP**

By: <u>s/ Julie Prag Vianale</u>
Julie Prag Vianale (Fla. Bar No. 184977)
2499 Glades Road, Suite 112
Boca Raton, Florida 33431
Telephone: (561)392-4750
Facsimile:  (561) 392-4775
Email:  Jvianale@vianalelaw.com

*Counsel for Plaintiff*

**THE BRUALDI LAW FIRM, P.C.**
Richard B. Brualdi (to be admitted *pro hac vice*)
29 Broadway, Suite 2400
New York, NY 10006
Telephone:  (212) 952-0602
Facsimile:  (212) 952-0608
Email:        rbrualdi@brualdilawfirm.com

*Of Counsel*